# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Gaston, Minors.

UNPUBLISHED
May 5, 2015

No. 323707
Monroe Circuit Court
Family Division
LC No. 12-022778-NA

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child returned to parent). We affirm.

In October 2012, respondent's four children were removed from her custody and placed in foster care. At that time, respondent and the children were residing in a homeless shelter. The trial court exercised jurisdiction over the children based on respondent's plea of admission to allegations that she failed to provide the children with a proper home, that she had an unresolved substance abuse problem with cocaine, that she required treatment for mental illness, and that she was arrested for and pled guilty to domestic violence perpetrated against two of the children.

A case service plan was established to enable respondent to work toward reunification with her children, but respondent did not consistently attend visitation, and she did not consistently comply with drug screen requirements. Respondent's drug screens periodically tested positive for cocaine. Respondent failed to attend visitation in October 2013. When visitation resumed in November 2013, the children's foster parents and trauma therapist reported that the children exhibited traumatic reactions and showed signs of fear and anxiety. In January 2014, the trial court agreed to suspend visitation because of the impact it was having on the children. Respondent was required to participate in therapy sessions with the children's trauma therapist in preparation for joint therapy to repair her relationships with the children. Respondent attended the sessions until March 2014, but clashed with the therapist over the composition of apology letters to the children. Following another drug relapse, respondent admitted herself in April 2014 to a 70-day inpatient substance abuse treatment program. Petitioner filed a supplemental petition to terminate respondent's parental rights based on her inability to resolve the problems of homelessness, mental illness, and substance abuse.

At the termination hearing, respondent testified that she expected to be able to care for the children within three to six months. Respondent blamed the children's trauma therapist for

-1-

her relapse. She also believed that the foster parents alienated her children and caused them to fear visitation. The children's therapist testified that the children made progress in therapy, but the progress would be erased if they were returned to respondent's care. She stated that the children required permanence and certainty about their situation, which could only come if respondent's parental rights were terminated.

Respondent first argues that the trial court erred in finding that Fostering Futures, the contract agency assigned to manage her case, provided reasonable reunification services. She argues that the frequent reassignment of caseworkers disrupted the continuity of services and forced her to repeatedly share her painful history with new workers. The Department of Human Services (DHS) must make reasonable efforts to reunify a child with the child's family in all cases, except where aggravated circumstances are present. MCL 712A.19a(2); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008) ("In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights."). "Before the court enters an order of disposition, the DHS must prepare a case service plan, which must include, among other things, a '[s]chedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement.'" *In re Mason*, 486 Mich at 156, quoting MCL 712A.18f(3)(d). "When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Id.* at 90; see also MCR 3.977(K). "A finding is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Rood*, 483 Mich at 91 (quotation marks, citation, and brackets omitted).

The trial court found that Fostering Futures offered sufficient services to help respondent achieve reunification. Although different caseworkers were assigned to the case, the record does not support respondent's argument that the different assignments unreasonably disrupted the provision of services. Respondent does not identify any difficulty in complying with drug screens, therapy, or other services that could be attributed to the reassignment of caseworkers. Rather, respondent relied substantially on services she found herself in Toledo. Respondent testified that she sought services in Toledo because a lack of transportation prevented her from using services in Michigan. She failed to cite any connection between the reassignment of caseworkers and her choice of Ohio services, nor did she opine that the Ohio services were an inadequate substitute for Michigan services. Respondent admitted at the termination hearing that she would require services the rest of her life to maintain sobriety and mental stability, which would necessarily encompass working with different service providers. The trial court did not clearly err in finding that petitioner made reasonable efforts to provide services to secure reunification. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

As part of her argument that petitioner failed to make reasonable efforts to reunify the family, respondent contends that the therapist who worked with her and the children was unreasonably harsh with respect to her therapeutic demands. Our examination of the record finds no support for respondent's claim; the therapist, in light of respondent's background and

the many obstacles that needed to be overcome, made demands that were reasonable and necessary for reunification. It was respondent's failures and not the nature of the therapist's demands that led to the termination of respondent's parental rights.

Respondent next argues that the trial court erred in finding that the statutory grounds for termination were established by clear and convincing evidence and in finding that termination was in the children's best interests. Respondent contends that the trial court gave insufficient weight to respondent's efforts in finding services, in taking the initiative to find inpatient substance abuse treatment, and in ending the abusive relationship with the children's father.

If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

MCL 712A.19b(3)(c)(*i*), (g), and (j) permit termination of parental rights under the following circumstances:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

After receiving services for almost two years, respondent failed to establish a pattern of consistently maintaining sobriety and stability. Despite receiving intensive outpatient treatment,

respondent relapsed with respect to her substance abuse in mid 2013, late 2013, and again in early 2014. At the time of the termination hearing, she was residing in an inpatient treatment facility. Even assuming that respondent could successfully complete the treatment program, her ability to maintain sobriety was doubtful based on her history. Many of respondent's relapse triggers were circumstances that would be difficult for her to avoid. Given these risk factors, the trial court did not clearly err in finding that respondent was not reasonably likely to resolve her substance abuse problem within a reasonable time.

The evidence also showed that respondent failed to rectify her homelessness and lack of income. Respondent testified that she established suitable housing at the YWCA and that she could obtain a larger apartment if her children were returned. However, there remained the problem of the YWCA itself providing a trigger for relapse. Respondent's eligibility for Social Security benefits based on her anxiety was not determined. Respondent's plan to provide for her children through Social Security benefits, public assistance, and assistance from family members was, at best, an unrealized possibility. The evidence also supported the trial court's finding that respondent failed to resolve her mental health issues. Respondent argues that the trial court gave insufficient weight to evidence that she took initiative in resolving her problems by voluntarily admitting herself to inpatient substance abuse treatment and seeking out services from the YWCA and other providers. The salient issue, however, is not respondent's effort or intentions, but whether she succeeded in resolving the adverse conditions. Respondent did not show adequate benefit from her services, whether she found them herself, or received them from petitioner. The trial court did not clearly err in finding that the evidence supported termination of respondent's parental rights under § 19b(3)(c)(*i*).

The evidence supporting termination under § 19b(3)(c)(*i*) also supported termination under § 19b(3)(g). Respondent's failure to establish permanent housing and her continuing struggles with mental illness and substance abuse will continue to prevent her from providing proper care and custody for her children. Respondent did not have a reasonable or realistic plan for providing proper care and custody.

Termination was also warranted under § 19b(3)(j). Petitioner presented ample evidence that the children are psychologically fragile as a result of the trauma they experienced in respondent's custody. They exhibited extreme behaviors reflecting their anxiety over abuse and homelessness, and there was evidence that they were terrified of the prospect of being returned to respondent's care. The trauma therapist testified that their progress in therapy would likely be erased if they were returned to respondent care. There was also evidence of physical abuse of the children by respondent. The evidence supports the trial court's determination that the children were reasonably likely to be harmed if returned to respondent's care.

Finally, we reject respondent's argument that termination of her parental rights was not in the children's best interests. Most of respondent's argument is devoted to her assertion that this Court in *In re Moss*, 301 Mich App at 90, wrongly held that a preponderance of the evidence test is applicable in deciding whether termination is in a child's best interests, rather than a clear and convincing evidentiary standard. *In re Moss* is binding precedent that must be followed. MCR 7.215(J)(1). We also note that our Supreme Court unanimously denied leave in *In re Moss*. 495 Mich 856 (2013). We decline the invitation to reexamine *In re Moss* and its adoption of a preponderance of the evidence standard for purposes of the best-interests analysis.

-4-

Petitioner presented ample evidence that the children suffered severe trauma in respondent's care. They were exposed to violent abuse, homelessness, controlled substance abuse, and poverty. Over the course of this proceeding, all of the children made progress in therapy. They became less anxious and less prone to traumatic reactions. However, the children suffered from uncertainty regarding their home and family, and there was evidence that they were terrified of the prospect of being returned to respondent's care. The trauma therapist testified that the children were in need of permanence to continue their healing and progress, which respondent could not provide. The trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (in addressing the best interests, a court may consider a child's bond to a parent and the child's need for finality, stability, and permanency).

Respondent, however, contends that the trial court failed to individually consider the best interests of the children and simply used a collective approach. "[T]he trial court has a duty to decide the best interests of each child individually." *Id.* at 42. The trial court allowed three of the four children to testify, with the one exclusion being based on lack of competency due to age and communication skills. And the court had the children testify in chambers with only the court and counsel present, while providing a live video stream into the courtroom to protect respondent's rights. In the trial court's extensive written opinion and order, the court addressed and summarized the testimony of each of the three children. The trial court also reviewed and summarized the testimony of others in relationship to the condition and progress of each of the children. When the trial court addressed the best-interests question, it cited *In re Olive/Metts Minors* and specifically found that "it is in the best interests of *each* child [court proceeded to list the names of the children] that [respondent's] . . . parental rights to each of these children be . . . terminated." (Emphasis added.). The trial court later noted that "all four children have seen significant behavioral improvements, developmental gains[,] and even medical improvement since their removal," and "[d]ue to structure, sibling visitation, consistent parenting, medical care[,] and vigilance on the part of the foster parents . . ., all four children have made enormous improvements." On this record, we hold that the trial court clearly considered the best interests of each child, giving them individual treatment.[1]

Affirmed.

/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher

---

[1] Respondent also contends that the trial court failed to consider the interests of the children to be kept together as a unit instead of split up into two groups as they were in foster and pre-adoptive placement. However, as part of its best-interests analysis, the trial court indicated that it considered the foster home placements and adoption possibilities, as well as considering placement with relatives, which was not feasible because there were no suitable relatives. Reversal is unwarranted.