# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MORGAN, Minors.

UNPUBLISHED
July 23, 2015

Nos. 325818; 325821
Kalamazoo Circuit Court
Family Division
LC No. 2009-000238-NA

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

Respondent mother and respondent father appeal by right the trial court's order terminating their parental rights to their four minor children under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that the children will be harmed if returned to the parents' care). We affirm.

Respondents first contend that the trial court clearly erred in finding statutory grounds for terminating their parental rights. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's determination is reviewed for clear error. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (citation omitted).

The primary conditions leading to the adjudication in this matter were respondents' substance abuse, domestic violence, and unsatisfactory living conditions. Further, during the pendency of these proceedings, the Department of Human Services (DHS) identified emotional stability and parenting skills as barriers to reunification for both respondents. To address these various issues, DHS referred respondents to a number of services, including counseling, psychological evaluations, parenting skills training through the Early Intervention Program, random drug screens through SPAN, intensive outpatient substance abuse treatment, and Alcoholics Anonymous/Narcotics Anonymous (AA/NA) meetings. The record throughout this case reveals that respondents' participation in these services was sporadic at best and at times completely non-existent. For example, respondents participated in only three counseling sessions with their first outreach counselor, missed multiple appointments for psychological evaluations, participated in only a handful of meetings with the Early Intervention specialist,

-1-

visited their children inconsistently (and at one point during the proceedings did not see them for over a month), repeatedly failed to meet with caseworkers, and failed to submit to a single drug screen through SPAN. When respondents did submit to drug screens, administered by DHS, they tested positive for illegal substances such as marijuana as recently as June and October 2014, respectively. At the time of the October 31, 2014 termination hearing—i.e., approximately 16 months after these proceedings were initiated—respondents had only just begun to show even minimal compliance with services. Nonetheless, it was abundantly clear that they had not rectified any of the above barriers to reunification. Specifically, they had not adequately addressed their emotional stability, substance abuse, or domestic violence concerns, did not have suitable housing, and had not improved their parenting skills. Thus, at the time of termination, there was no reasonable likelihood that respondents would rectify their barriers to reunification within a reasonable time, MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and likewise no reasonable likelihood existed that they could provide their children with proper care and custody within a reasonable time, MCL 712A.19b(3)(g). Finally, based upon their continuing issues, it was reasonably likely that the children would be harmed if returned to respondents' care. MCL 712A.19b(3)(j). As a result, there was clear and convincing evidence to support termination of both respondents' parental rights under the cited statutory grounds, and the trial court did not clearly err in so finding.

Respondents further argue that DHS failed to provide them adequate services in light of their inconsistent access to a telephone and problems securing transportation in order to comply with their drug testing requirements. This argument lacks merit. First, respondents' claims that they were unable to call in to SPAN on a consistent basis because of telephone issues is unsupported, and, in fact, contradicted, by the record: the record demonstrated that respondents almost always had access to a telephone when they needed one, either because they had their own cellular telephone or because they had access to friends' and neighbors' telephones. In fact, they were frequently able to correspond with caseworkers and the foster parent via telephone. Thus, as respondents themselves admitted at the termination hearing, their repeated failures to call in to SPAN had less to do with inconsistent access to a telephone and more to do with their general lack of willingness to comply with a service they felt they did not need. Moreover, to the extent respondents had transportation problems, the caseworkers repeatedly informed them that if they notified the caseworkers early enough on days they were required to submit to drug screens, the caseworkers would come to respondents' home and personally administer them. Respondents rarely took advantage of this offer.

Respondent father also specifically argues that DHS failed to make reasonable efforts when it failed to provide him with timely substance abuse services. According to father, the extent of DHS's efforts to help him with this issue at the outset of the case was offering him drug screens. And, while father acknowledges that he was eventually referred to intensive outpatient substance abuse treatment, he claims that this service was not timely and that the caseworker failed to assist him with setting up the service because she merely provided him with the telephone number for the treatment center while knowing that father had telephone issues. Again, father's argument lacks merit. As a threshold matter, contrary to father's assertion, DHS did more than simply provide him with drug screens at the outset of the case. Rather, DHS also referred father for outreach counseling, which was designed in part to address substance abuse. Additionally, DHS referred father for a psychological evaluation. But, as discussed above, father substantially failed to participate in counseling, and he only participated in a psychological

evaluation in June 2014, after the termination petition had been filed and after months of missed appointments. When father eventually did complete his psychological evaluation, it was recommended that he participate in intensive outpatient substance abuse treatment. However, once DHS referred father for that service, he failed to even make an appointment. And, while father argues on appeal that his failure to comply stemmed from his not having access to a telephone, his own testimony at the October 31, 2014 termination hearing belies that claim. To the contrary, father explained—rather unconvincingly—that he failed to make an appointment because mother lost the telephone number for the treatment center. When asked why he did not just call his caseworker or someone else to obtain the telephone number, father responded that it was "pointless."

Finally, respondent mother generally argues that DHS failed to make reasonable efforts in other ways, such as when the caseworker failed to offer respondents counseling services "for an eight-month period," never viewed respondents' home, merely mailed them a copy of their parent-agency treatment plan, and "only had personal contact with the[m] at review hearings at court." Again, these assertions are belied by the record which establishes that the caseworker made repeated efforts to meet with respondents at their home to discuss the parent-agency treatment plan and to view their home. Still, respondents repeatedly cancelled appointments, so except during review hearings, the caseworker was never able to meet with respondents in person. It was therefore out of necessity, not indifference, that the caseworker mailed respondents a copy of their parent-agency treatment plan. Likewise, the gap between counseling services was not the result of the caseworker's indifference toward respondents, but rather the fact that after the first round of outreach counseling services ended, respondents expressed no desire to participate in further counseling until June 2014. When they did, the caseworker promptly referred them to additional services.

In sum, the record in this case supports that DHS made substantial efforts to assist respondents with their many barriers to reunification. Respondents simply failed to meet their "commensurate responsibility" to participate in the services offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Respondent father finally argues that the trial court clearly erred in finding that termination of his parental rights was in the children's best interests. We disagree. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); see MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. We review this determination for clear error. *In re Olive/Metts*, 297 Mich App at 40.

At the time of termination, the minor children, who ranged in age from two to six years old, had been outside of respondents' care for approximately 18 months, the majority of which was spent in foster care. Patently, the children were in strong need of permanency, stability, and finality. *In re Olive/Metts*, 297 Mich App at 41-42. At the time of termination, respondents were unable to provide those things because they had substantially failed to participate in services and had not rectified the barriers to reunification. Thus, there was no real likelihood that the children "could be returned to [respondents'] care within the foreseeable future, if at all." *In*

*re Frey*, 297 Mich App at 249. On the other hand, the children were placed together in a loving foster home where their needs were being met, and the foster parent expressed an interest in adopting all four of them. Finally, throughout these proceedings, respondents displayed an inability to develop adequate parenting skills and were inconsistent in their parenting time visits. And when they did visit, they displayed inappropriate behaviors. So, by the time of termination, the two oldest children had repeatedly expressed that they did not wish to return to respondents' care. We have no problem concluding that a preponderance of the evidence supported that termination of respondents' parental rights was in the children's best interests. *In re Moss*, 301 Mich App at 90. The trial court did not clearly err in so finding. *In re Olive/Metts*, 297 Mich App at 40.

We affirm.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Cynthia Diane Stephens