*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. R. PHILLIPS-WIER, Minor.

UNPUBLISHED
March 14, 2024

No. 367045
Lenawee Circuit Court
Family Division
LC No. 21-000056-NA

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to the minor child, LRPW, under MCL 712A.19b(3)(c)(*i*) (condition leading to adjudication continues to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood the child will be harmed if returned to the parent). On appeal, respondent argues that the Department of Health and Human Services (DHHS) failed to provide reasonable efforts towards reunification because it failed to adequately assist respondent in overcoming her mental-health barrier to reunification. We affirm.

## I. BACKGROUND

On June 3, 2021, the DHHS filed a petition requesting that the trial court take jurisdiction over 5-month-old LRPW and issue an order removing her from respondent's home. In support of its petition, the DHHS alleged that respondent had repeatedly tested positive for THC and cocaine; was currently homeless; had not taken LRPW to see any licensed medical professional since LRPW's birth because respondent did "not believe in medical interventions"; violated a safety plan that was put in place following reports of possible physical abuse and medical neglect; and had a history of mental-health issues. The petition further alleged that the DHHS was concerned about whether respondent was mentally stable enough to care for LRPW because, during a recent interaction, respondent was "yelling and screaming at [LRPW] for crying and needing to be taken care of." The petition additionally alleged that respondent was using controlled substances while caring for LRPW.

On the same day that the petition was filed, the trial court entered an order to take LRPW into protective custody. In that order, the trial court found that reasonable efforts were made to prevent removal, including a referral to mental-health services.

-1-

Due to several delays, an order of adjudication was not entered until August 19, 2021. On that same day, the trial court entered an order of disposition, in which it ordered respondent to comply with her case service plan. As part of her case service plan, respondent agreed to, among other things, participate in a psychological evaluation and "follow all recommendations made by the" evaluator, and, more generally, to demonstrate progress towards becoming "emotionally and mentally stable."

At a November 2021 review hearing, the foster-care worker assigned to respondent's case testified that respondent had reported attending counseling services through "Omega Commons" and that respondent self-reported being diagnosed with "severe PTSD, severe anxiety, and moderately severe depression." But the worker also said that she had not seen "any reports" from Omega Commons and that she "look[ed] forward to getting those reports." As for the psychological evaluation that respondent was supposed to have done, the foster-care worker testified that she had not yet received a response from the doctor who was supposed to perform the evaluation. The worker testified that this was not surprising because the doctor had "a wait list which can last like up to a month," so she was just waiting to hear back.

At a permanency planning hearing in January 2022, respondent's case worker had still not heard back from the doctor who was supposed to perform respondent's psychological evaluation. The worker reported that the extended delay was due to "the wait list" and the doctor taking an "extended holiday"; the doctor was not going to be back in his office until February. The worker said that she had contacted another doctor to perform the evaluation, and that the DHHS would have respondent see whichever doctor was able to perform the evaluation first. During questioning by the trial court, the caseworker agreed that it may be possible to satisfy the psychological-evaluation requirement by accepting a case treatment plan from her current counselor. The worker could not say, however, whether this was a viable option because the caseworker was still waiting to hear back from respondent's counselor. At the end of the hearing, after finding that reasonable efforts had been made, the trial court emphasized the need for the psychological evaluation and for the DHHS to explore alternative options if its preferred doctor was still unavailable.

The next hearing took place on April 11, 2022. At that hearing, a caseworker for the DHHS reported that respondent was seen for her psychological evaluation, and a copy of that evaluation was being sent to respondent's therapist for respondent and the therapist to review together, per respondent's request. Still, according to the caseworker, respondent's emotional stability and mental health continued to be barriers to reunification. The caseworker reported issues during parenting times when the DHHS needed to step in while respondent was "struggling with her own mental health."

At a June 2022 hearing, the supervisor overseeing respondent's case testified that, since the last hearing, respondent's participation in counseling had been inconsistent. The supervisor said that respondent just recently had her first counseling session in three months, and said that this was particularly concerning because respondent's psychological evaluation "recommended intensive psychotherapy." At the end of the hearing, the trial court emphasized the importance of respondent showing progress in addressing her mental health during the next reporting period because that issue still posed a significant barrier to returning LRPW to respondent's care.

At a September 2022 hearing, a caseworker with the DHHS reported that respondent's mental health continued to be a concern. The worker testified that, while respondent had made progress in addressing her mental health, that progress was "clearly not translating" to addressing respondent's ability to properly care for LRPW. This hearing had to be continued, and at the continuation, the caseworker reported that she had spoken to respondent's therapist since the last hearing, and the therapist informed the caseworker that he was no longer seeing respondent. According to the caseworker, the therapist ended his counseling relationship with respondent "because of [respondent's] disrespect with [the counselor], and that she was mentally unstable." While the caseworker did not say when the relationship was terminated, she reported that respondent had not seen her therapist for the entire month of August. The caseworker also reported that respondent had since reached out to a new therapist, who was going to see her in less than a week. Despite respondent seeking a new therapist, the caseworker was concerned about whether respondent could adequately address her mental health because her therapist of "well over a year . . . has concerns with her mental wellbeing." At the end of the hearing, the trial court summarized the progress (and lack thereof) that respondent had made throughout the proceedings. As it concerned respondent's attempts to address her mental health, the trial court opined that respondent had largely ignored the recommendations from her psychological evaluation and instead self-medicated with marijuana (as demonstrated by drug tests in which respondent tested positive for THC), which was "not in accordance with what the psychologist recommended." Due to respondent's failure to benefit from the services she was being offered, the trial court changed the goal for this case from reunification to adoption, ordered that reasonable efforts toward reunification were no longer required, and ordered the DHHS to file a termination petition.

Eventually, following a termination trial in June 2023, the trial court found that the DHHS had established grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court also found termination of respondent's parental rights was in the LRPW's best interests. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues that the trial court erred when it found that reasonable efforts were made toward reunification, specifically contesting the DHHS's attempts to address respondent's mental health. We reject this argument. The DHHS's attempts to address respondent's mental health plainly satisfied the reasonable-efforts requirements.

## A. STANDARD OF REVIEW

Generally, a trial court's findings with respect to reasonable efforts are reviewed for clear error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). But respondent failed to preserve her reasonable-efforts argument in the trial court by objecting to the DHHS's efforts or otherwise indicating that the DHHS's efforts were inadequate. *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022). Accordingly, this issue is unpreserved, and unpreserved issues in appeals from child protective proceedings are reviewed under the plain-error rule. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). To be entitled to relief under the plain-error rule, respondent must establish that an error occurred, that it was plain or obvious, and that the error affected substantial rights. See *id.*

## B. ANALYSIS

It is well-established that the DHHS has an affirmative duty, established by statute, to make reasonable efforts to reunify a parent and child before seeking termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). See MCL 712A.19a(2).

The thrust of respondent's argument on appeal is that the DHHS failed in its duty to provide reasonable efforts because it failed to help respondent adequately address her mental-health issues. Respondent contends that this failure is demonstrated by the fact that it took the DHHS eight months to obtain a psychological evaluation of respondent. This failure was notable, respondent argues, because the DHHS identified respondent's mental health as an issue in the DHHS's initial petition, and it is routine for the DHHS to obtain a psychological evaluation when it suspects that a respondent is struggling with mental-health issues. Respondent concludes by emphasizing that her struggles with her mental health clearly played a role in the trial court's decision to terminate respondent's parental rights, meaning that the DHHS's alleged failure in this respect likely affected the outcome of the proceedings.

This argument hinges on this Court first concluding that the DHHS failed to provide reasonable efforts because it took eight months for the DHHS to obtain a psychological evaluation of respondent. We conclude that the facts of this case do not support a finding that the DHHS failed to provide reasonable efforts, and so the trial court did not plainly err when it found that reasonable efforts were in fact provided.

At the outset, it bears noting that respondent does not dispute that the DHHS created a service plan outlining the steps that the DHHS and respondent were to take to rectify the issues that led to court involvement and to achieve reunification. See *In re Hicks/Brown*, 500 Mich at 85-86 ("As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification."). Nor does respondent dispute the adequacy of the service plan provided.

As part of respondent's case service plan that she agreed to in August 2021, respondent was to participate in a psychological evaluation and "follow all recommendations made by the" evaluator. Additionally, respondent was to generally demonstrate progress towards becoming "emotionally and mentally stable." At the next hearing in November 2021, respondent's caseworker reported that respondent was in counseling to help address her mental-health issues. The caseworker also reported that she had contacted a doctor to perform respondent's psychological evaluation but had yet to hear back. At the next hearing in January 2022, the caseworker reported that respondent had still not been seen for her psychological evaluation due to scheduling difficulties with the doctor who was to perform the evaluation. The caseworker said that she was therefore looking for alternative doctors who could perform the evaluation sooner. During the course of this hearing, the trial court expressed concern about the delay in respondent's psychological evaluation and explored potential alternatives to the evaluation, such as respondent's current counselor creating a treatment plan. The caseworkers stated that the DHHS would be open to such alternatives (while also noting that the DHHS had yet to receive any reports from respondent's then-counselor), and the trial court accordingly ordered the DHHS to explore whether those alternatives would be acceptable. By the time of the next hearing in April 2022,

respondent had finally been seen for her psychological evaluation, and the DHHS and respondent were waiting for the results.

Nothing about these facts suggests that the DHHS failed in its duty to provide reasonable efforts. While there was a significant delay in obtaining the psychological evaluation, it is not apparent that the delay was due to a lack of effort on the part of the DHHS; the DHHS was plainly attempting to get the psychological evaluation performed as evidenced by the fact that it was in contact with a doctor to perform the evaluation following the August 2021 hearing. The delay in obtaining the psychological evaluation was caused by scheduling difficulties with the doctor, not by any failure on behalf of the DHHS.

Moreover, during the delay, respondent's mental health did not go unaddressed; respondent was in counseling, and the DHHS agreed to work with respondent to ensure that her chosen counselor was qualified to meet her mental-health needs. Thus, both respondent and the DHHS were plainly attempting to address the goal in her service plan to demonstrate progress towards becoming "emotionally and mentally stable" while they were waiting for respondent to receive a psychological evaluation.

Finally, addressing respondent's mental health was only one part of her service plan. She also needed to address—and agreed to address as part of her service plan—her unstable housing, her unstable income, her parenting abilities, and her issues with substance abuse. Respondent takes no issues with the substantial efforts that the DHHS made to address these issues before respondent received her psychological evaluation.

To summarize, while respondent had to wait eight months to obtain a psychological evaluation, the DHHS was plainly attempting to obtain the psychological evaluation as soon as possible, the DHHS was still working with respondent to address her mental health through counseling even without the psychological evaluation, and the DHHS addressed other barriers to reunification while waiting for respondent to receive her psychological evaluation. On such facts, we cannot conclude that the trial court plainly erred when it found that the DHHS provided reasonable efforts.

As one final point, we note that respondent seemed to abandon professional treatment of her mental health after she received her psychological evaluation. At the June 2022 hearing, the supervisor overseeing respondent's case reported that respondent had only recently seen her counselor for the first time in three months, despite that respondent's psychological evaluation recommended "intensive psychotherapy." Then, at the September 2022 hearing, it was reported that respondent's chosen therapist had ended their relationship due to respondent's behavior, and respondent had not been to counseling since July (though she had an appointment with a new therapist scheduled for less than a week after the hearing). While we appreciate respondent's argument that it is possible she could have better addressed her mental-health issues had she obtained a psychological evaluation sooner, we cannot ignore the fact that respondent's apparent willingness to address her mental health dropped precipitously following her psychological evaluation. On such a record, it is difficult to give credence to respondent's argument that the problem in this case was the DHHS's failure to get respondent a psychological evaluation sooner. The record instead supports concluding that the DHHS expended reasonable efforts to address respondent's issues with her mental health, but respondent failed in her "commensurate

responsibility" to participate in and benefit from the services offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood