*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re K. SHARICK, Minor.

UNPUBLISHED
April 25, 2024

No. 367283
Livingston Circuit Court
Family Division
LC No. 2021-016278-NA

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, KS, under MCL 712A.19b(3)(c)(*i*), (g), and (j). Because there are no errors, we affirm.

## I. BASIC FACTS

In June 2021, petitioner filed a petition seeking temporary jurisdiction over KS. The petition alleged respondent lacked an income or means to provide KS with proper care and custody and that he had physically assaulted KS by choking him. In July 2021, petitioner amended the petition, seeking termination of respondent's parental rights. Included in the amended petition were allegations that respondent had a history of domestic violence and substance abuse. Following an adjudication trial, the court found statutory grounds to take jurisdiction over KS. However, at the subsequent termination hearing, the trial court found that petitioner was required to make reasonable efforts to reunify respondent and KS because no aggravating circumstances were present.

A parent-agency treatment plan was created, and the court entered an order requiring respondent to complete a substance abuse assessment, a psychological evaluation, parenting classes, and a domestic violence intervention program. He was also ordered to obtain and maintain a legal source of income and adequate housing. Weekly contact with the caseworker was also required.

In December 2022, petitioner filed a supplemental petition seeking again to terminate respondent's parental rights, alleging that he did not have suitable housing or income, had failed to complete his treatment plan, and had failed to maintain any meaningful contact with petitioner

or his foster care worker. Following a termination hearing, the court found statutory grounds for termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The court also found the termination of respondent's parental rights was in KS's best interests. In doing so, the court found that petitioner had made reasonable efforts to reunify KS with respondent.

## II. REASONABLE EFFORTS

## A. STANDARD OF REVIEW

Respondent argues petitioner did not make reasonable efforts to reunify him with KS. In order to preserve an issue that petitioner failed to make reasonable efforts toward reunification, "the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted). Because respondent did not object or otherwise indicate that the reunification efforts were inadequate, we review this unpreserved claim for plain error affecting substantial rights. See *In re MJC*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2.

## B. ANALYSIS

"Reasonable efforts to reunify the child and family must be made in *all* cases except those involving aggravated circumstances." *In re Simonetta*, 340 Mich App 700, 707; 987 NW2d 919 (2022) (quotation marks and citation omitted). Termination is premature when a respondent is "not afforded a meaningful and adequate opportunity to participate." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). The burden is on the petitioner to "ensure that appropriate services are provided." *In re Rood*, 483 Mich 73, 105; 763 NW2d 587 (2009). Additionally, "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *Atchley*, 341 Mich App at 339 (quotation marks and citation omitted).

Here, petitioner presented evidence that reasonable efforts were made to engage respondent in services and reunify him with KS. A caseworker testified that she attempted to contact respondent at least once every 14 days throughout the proceedings. She testified that she sent respondent e-mails and letters, called him on the telephone, and visited him three times while he was incarcerated. Respondent, however, did not maintain consistent communication with her and rarely responded to her messages. For instance, respondent failed to provide the caseworker with a verification of employment. Additionally, although two inspections of his house were attempted, the caseworkers were denied access to the house on both occasions.

The caseworker referred respondent to a domestic violence program and a substance-abuse program. He did not participate in either program. The caseworker also referred him to a psychological assessment. Respondent missed his first scheduled appointment and was incarcerated when the second was scheduled to occur. After his release from incarceration, he did not make or attend any appointments. Respondent only attended 40% of the offered online parenting classes. He did not demonstrate a benefit from the classes.

In sum, the record reflects that respondent was referred to multiple services throughout the proceedings; however, he failed to complete a single service provided to him. He also did not maintain sufficient contact with KS's caseworkers. Given this record, there is no reasonable expectation that respondent would complete his services if given more time. Accordingly, we conclude that the trial court did not clearly err by finding that petitioner made reasonable efforts to reunify respondent and KS.

## III. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues the trial court erred by finding that termination of respondent's parental rights was in KS's best interests. We review the trial court's findings and ruling that termination is in the child's best interests for clear error. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

### B. ANALYSIS

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). To determine whether termination of parental rights is in a child's best interests, the court should consider factors including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). The trial court may also consider the child's well-being while in care and the possibility of adoption. *Id.* at 714 (citation omitted).

Here, petitioner presented evidence that respondent physically abused KS while he was in respondent's care. Specifically, he choked KS until he could not breathe. The assault left several scratches and bruises on KS's neck, chest, and legs. The record reflects that respondent had a history of perpetrating domestic violence against his girlfriends and that his parental rights to four other children were terminated as a result of physical abuse. Respondent did not participate in any services aimed at rectifying his domestic-violence history.

Further, KS and respondent do not share a bond. Respondent did not see KS for a two-year period. At the termination hearing, he could not recall KS's birthday and he stated that he had not sent him any gifts for his birthday or for other holidays. Indeed, he did not provide KS with any financial support after KS was removed from his care. A caseworker further testified that KS reported to her that he did not wish to see or live with respondent. Respondent was offered parenting classes, but he did not complete them.

KS was well-bonded to his foster family and was happy that he was able to reside there with one of his brothers. His foster family provided for all his needs, including private tutoring, individual therapy, and medical treatments. On appeal, respondent argues that termination of his parental rights was not in KS's best interests because the foster parents were not guaranteed to

adopt him and had, in the past, expressed concerns about adopting him. However, at the termination hearing, a caseworker testified that the foster parents are "open to adoption" and are "moving in the direction" of adopting KS if there is a need. The trial court found, based upon the caseworkers testimony, that adoption was a possibility. That finding was not clearly erroneous.

In light of this record, the trial court did not clearly err by finding termination of respondent's parental rights to be in KS's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray