*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re F. E. DEANDA III, Minor.

UNPUBLISHED
May 16, 2024

No. 367340
Wayne Circuit Court
Family Division
LC No. 2016-523296-NA

Before: JANSEN, P.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating his parental rights to the minor child, FED, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions), MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions that led to jurisdiction), MCL 712A.19b(3)(g) (failure to provide proper care or custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. BACKGROUND

On August 7, 2020, the Department of Health and Human Services (DHHS) filed a petition for temporary custody of FED. The petition alleged that FED was born with cocaine in his system, respondent was under the influence of drugs during several hospital visits, and that respondent was banned from visiting FED because of substance abuse concerns. The petition further stated that respondent had a history with Children's Protective Services (CPS), abused drugs, and did not have suitable housing. At a preliminary hearing on the same date, the trial court found that based on the testimony from CPS, FED would be at a significant risk of harm if returned to the care of respondent due to his substance abuse, unemployment, and lack of suitable housing.

At the adjudication trial on October 27, 2020, respondent admitted that he had a history of substance abuse and that he did not have suitable housing. The trial court found that FED lacked proper care and custody under MCL 712A.2(b)(1) and (2), placed FED in the care of the DHHS,

---

[1] FED's mother was also a named respondent, but passed away in July 2021 while the case was ongoing.

-1-

and ordered a parent service plan for respondent. Respondent's service plan stated that he must: attend all court hearings, attend all medical appointments for FED, attend all weekly parenting-time visits, attend individual counseling with a substance abuse component, maintain appropriate and suitable housing, maintain contact with DHHS, obtain and maintain a legal source of income, participate in and benefit from parenting classes, sign all necessary releases of information, and complete weekly random drug and alcohol screenings.

In July 2022, the DHHS filed a permanent custody petition to terminate respondent's parental rights after respondent failed to make any progress on his service plan, continued to test positive for cocaine, failed to maintain contact with the DHHS, was terminated early from parenting classes for lack of compliance despite five different referrals, lacked suitable housing and employment, and missed the vast majority of scheduled visits with FED.

On May 1, 2023, the trial court held a hearing on the supplemental petition. Adayjah Davis, the foster care worker for FED, testified that she was the author of the supplemental petition and had been in charge of the case since 2020. Davis testified that FED had been in the DHHS's care for almost three years at the time of the hearing.

With regard to respondent's service plan, Davis stated that respondent never completed any of the services ordered and that he stopped all communication with the DHHS in June 2022. Davis reported that respondent did not participate in the majority of his ordered drug screens, but the four tests he did take all came back positive for cocaine. Regarding housing, Davis testified that respondent did not find or maintain suitable housing despite referrals to several housing programs. Davis further stated that although respondent reported that he received supplemental security income, he never provided the DHHS with any confirmation. She also stated that respondent claimed that he started working for a company called Magna in 2022, but that the DHHS was unable to verify that employment. Davis testified that respondent failed to attend 70 of 88 scheduled visits with FED and that his last visit was in June 2022. Davis also testified that respondent was incarcerated in December 2022 on charges of first-degree murder, MCL 750.316, and tampering with evidence, MCL 750.483a(6)(a).

The trial court found that statutory grounds to terminate respondent's parental rights were established by clear and convincing evidence under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(c)(*ii*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j). The court noted that respondent was given a service plan in October 2020 to address the conditions that brought FED into care but failed to complete it, despite numerous referrals. The trial court further found that reasonable efforts were made to provide services to respondent, but respondent failed to avail himself of those services. The trial court concluded respondent's failure to comply with his service plan, coupled with his incarceration, made it reasonably likely that FED would be at risk of harm if returned to respondent's care.

A separate hearing was held on whether it was in FED's best interests to terminate respondent's parental rights on July 17, 2023. The trial court noted that respondent failed to complete his service plan and continued to test positive for cocaine. The court stated that respondent missed the vast majority of his scheduled visits with FED, failed to establish a bond with FED, and continued to neglect the importance of FED receiving stability and permanence by failing to complete his services. The trial court stated that FED deserved stability and permanence,

was thriving in his foster home, and had a bond with his foster parents. The trial court determined that respondent did not demonstrate fitness as a parent and could not provide FED with a safe and stable environment. The trial court found that it was in FED's best interests to terminate respondent's parental rights under MCL 712A.19b(5).

This appeal followed.

## II. ANALYSIS

Respondent argues on appeal that the DHHS did not make reasonable efforts to reunify respondent with FED because it did not offer respondent any substance abuse treatment, grief counseling, or a parent partner, and failed to facilitate services with respondent while he was incarcerated. We disagree.

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

In order to preserve an argument that the DHHS failed to make reasonable efforts towards reunification, a respondent must "object or indicate that the services provided to them were somehow inadequate . . . ." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted). "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id*. (quotation marks and citation omitted). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *Id*. at 337. The opening to challenge the adequacy of the efforts made by petitioner ends at reunification or when the trial court terminates a respondent's parental rights. *Id*. Here, respondent did not contest the adequacy of the DHHS's efforts prior to termination of his parental rights. Therefore, this issue is not preserved.

Unpreserved claims in termination cases are reviewed for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted.) Typically, an error affects substantial rights if it causes prejudice by affecting the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). The party asserting plain error carries the burden to show prejudice. *In re MJC*, ___ Mich App at ___; slip op at 2.

### B. THE DHHS MADE REASONABLE EFFORTS AT REUNIFICATION

The trial court properly found that the DHHS made reasonable efforts at reunification prior to terminating respondent's parental rights.

Under MCL 712A.19a(2), reasonable efforts must be made, absent aggravating circumstances, to reunify a child with his family before the DHHS seeks termination of parental rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). The DHHS has a duty to make *reasonable* efforts to reunify parent and child, which includes creating a service plan, but this does not require the DHHS to offer every single service available as part of these efforts. *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). Further, "there exists a

commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Therefore, the respondent should be given a reasonable time to make changes and benefit from services before the trial court terminates his parental rights. *In re Mason*, 486 Mich 142, 159; 782 NW2d 747 (2010). The trial court may properly terminate a respondent's parental rights where he or she "failed to either participate or demonstrate that they sufficiently benefited from the services . . . specifically targeted to address the primary basis for the adjudication," *Frey*, 297 Mich App at 248.

The DHHS created a service plan for respondent that included both substance abuse treatment and grief counseling. From October 2020, when respondent was given his service plan, to December 2022, when respondent entered jail, he had over two years to comply with services and show that he was benefitting from them, but he failed to do so. The DHHS referred respondent to individual therapy with a focus on substance abuse, which he failed to complete. Respondent never requested to be referred to an inpatient or outpatient substance abuse treatment facility, and the court never ordered it because respondent completed a month-long program on his own accord. Respondent was also referred to therapy for his grief, but he chose not to attend. At the dispositional review hearing on January 25, 2022, when respondent expressed that he was "going through a lot of things" with the death of FED's mother and his own father, the trial court replied that respondent was being re-referred for all services, including individual therapy, which he could use to process trauma and help him move forward. The trial court further emphasized that the services respondent was ordered to complete were designed to help him, and that it was important that he engage in those services.[2] However, respondent again refused to participate in services, which resulted in the DHHS filing the supplemental petition to terminate respondent's parental rights in July 2022. The supplemental petition explained that respondent was referred to individual therapy and substance abuse therapy five times, but was terminated early three times for lack of compliance, and failed to make efforts to remain in the programs. As a result, respondent did not benefit from substance abuse therapy and tested positive for cocaine three times between April 2022 and July 2022. Respondent also failed to participate in consistent drug screenings or regularly contact the DHHS to determine which days were mandatory screening days. Thus, respondent was offered individual therapy for both substance abuse and grief counseling and refused to participate.

Respondent next argues that the DHHS failed to provide him with a parent partner. However, respondent refused to maintain contact with the DHHS as was required by his service plan and therefore the DHHS did not have the opportunity to match him with a parent partner. The trial court first recommended that respondent receive a parent partner at the initial dispositional review hearing on January 22, 2021. At the next dispositional review hearing in April 2021, the DHHS reported that respondent had no contact with the DHHS and was not participating in any services. The DHHS was unable to provide respondent with a parent partner when they could not contact him. At the October 2021 dispositional review hearing, it was reported that respondent completed inpatient substance abuse treatment in July 2021 and was re-referred for services. Then at a hearing in January 2022, the DHHS reported that respondent once again refused to stay in contact with them and that the last contact the DHHS had with respondent was at the hearing in

---

[2] Respondent was also re-referred to parenting classes, housing services, and employment services.

October 2021. Respondent had again been terminated from individual therapy and parenting classes. Still, respondent's attorney requested a parent partner at the hearing and respondent was re-referred for all services. At the dispositional review hearing in July 2022, the DHHS reported that respondent had been terminated from services and was questioning whether he was the biological father of FED, so DNA testing was requested. Regardless of the results, respondent was still the legal father of FED, and the DHHS had filed a supplemental petition to terminate his parental rights. Respondent did not object to the permanency goal being changed to a dual plan of reunification and/or adoption. At the pretrial hearing that followed, respondent was confirmed to be FED's biological father. Thus, respondent's own reluctance to participate in his service plan and failure to maintain contact with the DHHS resulted in him not obtaining a parent partner. Respondent ultimately agreed to changing the permanency goal for FED to adoption and never indicated prior to termination that the DHHS was not making reasonable efforts towards reunification because a parent partner was not secured.

Finally, respondent argues that the DHHS failed to facilitate services with respondent while he was incarcerated. However, at the May 2023 hearing on the supplemental petition to terminate respondent's parental rights, the trial court heard testimony from Davis, who stated that she repeatedly attempted to coordinate services for respondent while he was incarcerated but faced resistance from both respondent and the jail. Davis testified that due to COVID-19 restrictions, the jail did not allow her to visit respondent in person and told her that the visits must be through Zoom, but neither respondent nor his mother put any money into his account so that he could speak with her on Zoom. Davis contacted the jail but was not able to speak with anyone, and she was eventually informed that she had no jurisdiction to refer respondent for services in the jail and it was up to the county to provide services. Still, Davis contacted her supervisor to find an alternative way to provide services to respondent. Davis's supervisor advised her to use a messaging app to communicate with respondent, which she did. Davis gave respondent updates regarding FED through the messaging app and even spoke frequently with respondent's mother. Davis asked respondent's mother to connect her on a three-way call with respondent but was told by respondent's mother that she did not have money on her phone. However, Davis learned that respondent had access to a phone in jail and spoke frequently with his mother. Yet when Davis attempted to call the jail, she was never able to reach respondent. Respondent's argument that the DHHS did not provide services to him while he was in jail must fail since the evidence demonstrates that Davis clearly tried to coordinate services for respondent, but he would not speak to her on the phone.

III. CONCLUSION

The DHHS made reasonable efforts at reunification by developing and implementing a service plan that outlined the steps that respondent was required to take in order to rectify the issues that led to FED's removal from respondent's care. The DHHS provided respondent with a multitude of services including parenting classes, individual therapy and counseling, housing services, employment services, and visitation. However, it never appeared that reunification with FED was a priority for respondent given his lack of compliance with his service plan in the two years prior to his incarceration. Respondent refused to stay in touch with the DHHS, repeatedly tested positive for cocaine when he appeared for drug testing, and missed 70 of 88 scheduled visits with FED before the supplemental petition was filed. Therefore, the trial court did not plainly err

in finding that the DHHS made reasonable efforts at reunification prior to terminating respondent's parental rights.[3]

Affirmed.

/s/ Kathleen Jansen
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[3] Following the termination of respondent's parental rights, he pleaded guilty to second-degree murder, MCL 750.317, and was sentenced on November 14, 2023, to 20 to 40 years' imprisonment. Thus, even if services had been provided to respondent in jail or if he would have maintained contact with the DHHS for a parent partner to be secured, the outcome of the proceedings would not have been different since respondent is not available to care for FED.