*In re* FREY

Docket Nos. 307152 and 307154. Submitted June 13, 2012, at Detroit. Decided July 3, 2012, at 9:00 a.m.

The Department of Human Services (DHS) petitioned the Wayne Circuit Court, Family Division, for the termination of L. Frey's and C. Frey's parental rights to their minor child, P. L. Frey. The court, Mark T. Slavens, J., granted the petition on the basis of the grounds for termination in MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions supporting jurisdiction have not been rectified), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parental home). Respondents appealed.

The Court of Appeals *held*:

1. Termination of parental rights is appropriate when the DHS proves one or more grounds for termination under MCL 712A.19b(3) by clear and convincing evidence. The primary condition leading to adjudication in this matter was respondents' failure to resolve issues pertaining to respondent father's alcohol abuse and respondent mother's substance abuse. During the proceedings, issues also came to light concerning respondents' inability to provide adequate housing and financial support for the child, and respondents were involved in criminal activity. Under the circumstances, the trial court did not clearly err by determining that clear and convincing evidence existed for termination under the cited statutory grounds.

2. In a child protective proceeding, MCL 712A.19a(2) requires that reasonable efforts to reunite the child and family be made. If the respondents need accommodation in services, the time for requesting that accommodation is when the court adopts a service plan. In this case, respondents were ordered to participate in services, including drug screenings, and although they complied with many of the court's requirements, they repeatedly missed the drug screenings. Respondents asserted that the DHS had failed to accommodate their need for transportation services to ensure their compliance with the mandated drug screenings. However, they did not timely object or indicate that the services were inadequate and thus failed to preserve the issue. Regardless,

however, a caseworker had offered respondents bus tickets to facilitate their participation in drug screenings, but respondents refused the tickets because of the physical distance respondents lived from a bus stop. While the DHS had a responsibility to expend reasonable efforts to provide services to secure reunification, respondents had a commensurate responsibility to participate in the services that were offered. Respondents failed to either participate or demonstrate that they sufficiently benefited from the services provided. Consequently, the trial court properly found insufficient compliance and benefit, necessitating termination of respondents' parental rights.

3. If the trial court finds that there are grounds for termination of parental rights and under MCL 712A.19b(5) that termination of parental rights is in the child's best interests, the court must order termination of parental rights. The trial court did not clearly err by determining that termination of respondents' parental rights was in the best interests of the child given that the child had been in foster care or placed with relatives for 22 months, and the evidence showed that it was unlikely that the child could be returned to her parents' home within the foreseeable future.

Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — REASONABLE EFFORTS TO REUNITE THE CHILD AND THE FAMILY — ACCOMMODATION IN SERVICES.

In a child protective proceeding, reasonable efforts to reunite the child and the family must be made; if the respondent needs accommodation in services, the time for requesting that accommodation is when the court adopts a service plan; failure to timely object or indicate that the services are inadequate results in the issue being unpreserved; while the Department of Human Services has a responsibility to expend reasonable efforts to provide services to secure reunification, the respondent has a commensurate responsibility to participate in the services that are offered (MCL 712A.19a[2]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Jonathan E. Duckworth*, Assistant Attorney General, for the Department of Human Services.

*Wanda R. Cal* for L. Frey.

*Stacy M. Combs* for C. Frey.

*Janice H. Jones* for the minor child.

Before: MURRAY, P.J., and WHITBECK and RIORDAN, JJ.

PER CURIAM. In these consolidated appeals, respondents contest the trial court order terminating their parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions supporting jurisdiction have not been rectified), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parental home). We affirm.

Respondents contend that the trial court's findings were clearly erroneous and that the Department of Human Services (DHS) failed to sustain its burden of proving the statutory grounds for termination. Termination of parental rights is appropriate when the DHS proves one or more grounds for termination by clear and convincing evidence. *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000); *In re B & J*, 279 Mich App 12, 17; 756 NW2d 234 (2008). It is only necessary for the DHS to establish by clear and convincing evidence the existence of one statutory ground to support the order for termination of parental rights. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000). We review the lower court's findings for clear error. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999).

The primary condition leading to the adjudication in this matter was respondents' failure to resolve issues pertaining to respondent father's alcohol abuse and respondent mother's substance abuse. Further, during the pendency of the proceedings, issues came to light

pertaining to respondents' inability to provide adequate housing and financial support for the minor child, and that respondents were involved in criminal activity. We conclude that the trial court did not clearly err by determining that clear and convincing evidence existed for termination under the cited statutory grounds.

The minor child was removed in December 2009, after respondents and the child were involved in an automobile accident. At the time of the accident, respondent father was determined to have a blood alcohol level of 0.24 grams per 100 milliliters of blood. While the exact cause of the accident is unknown, evidence indicated that respondent father was driving at a rate of 100 miles an hour and that respondent mother and the minor child were in the vehicle at the time of the accident. This accident resulted in respondent father's fifth drunk driving conviction since 2007. Respondent mother admitted having taken a narcotic immediately before the accident and being aware that respondent father was inebriated when she voluntarily entered the vehicle with the child.

Respondents made admissions and pleaded no contest to parts of the petition, leading to the child being made a temporary court ward in January 2010 with placement in the care of her maternal grandmother. A dispositional hearing was held in February 2010. At that time, respondents were ordered to participate in a parent-agency agreement (PAA) that required their involvement in individual therapy, parenting classes, visitation with the minor child, substance abuse assessments, and drug screens. Participation in substance abuse treatment also was mandated if the respondents' drug screens were positive. Respondents were also required to maintain contact with the caseworker, obtain suitable housing and income, and undergo psychological evaluations.

Our review of the record supports the trial court's determination that respondents failed to comply with or benefit sufficiently from their participation in services in accordance with the court-ordered treatment plans. After completing a 30-day inpatient substance abuse program, respondent mother experienced a relapse in her drug use. Respondent father was incarcerated from December 2009 to July 2010 for the drunk driving offense that necessitated placement of the child into foster care. Thereafter, both he and respondent mother missed numerous drug screens, which was a significant issue to the trial court because of respondents' substance abuse histories. Respondents were in partial compliance with their respective treatment plans given that they did visit the child regularly and were reported as being behaviorally appropriate during those interactions. Further, respondents attended counseling and parenting classes, and at one point the trial court pronounced them in "95 or 98 percent compliance" with the PAA except for their failure to regularly participate in the required drug screens.

At that time, the concern expressed by the trial court and the DHS with regard to respondents' failure to comply with the mandated drug screens was premised on verifiable incidents in respondents' history and proved to be prescient. In May 2011, respondent mother tested positive for cocaine. In July 2011, respondents were arrested for their involvement in a home invasion. Respondent mother admitted that she had participated in the home invasion in order to steal prescription drugs. She was placed on probation and required to complete a 90- to 120-day inpatient substance abuse program. Respondent father was reincarcerated in May 2011. At the time of the final hearing, neither parent was physically available to care for the child. During the pendency of these proceedings, respondent mother was

arrested three times on charges of retail fraud and home invasion. Respondent father was incarcerated for approximately 1/2 of the time this case remained open. In light of their histories, the trial court was legitimately concerned with the ability of respondents to remain clean, sober, and out of prison for sufficient blocks of time in order to be available to provide adequate care for their minor child.

Respondents further allege that the DHS failed to provide them adequate services in light of their problems securing transportation in order to participate in drug testing. Respondents contend that they lacked access to transportation, resulting in their inability to comply with court-ordered drug screens. Respondents do not dispute that the caseworker offered them bus tickets, but allege that they lived several miles from a bus stop. While it is true that, with limited exceptions, "reasonable efforts to reunify the child and family must be made in all cases," MCL 712A.19a(2), respondents failed to object or indicate that the services provided to them were somehow inadequate, thereby failing to preserve this issue. "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000).

Although respondents now contend that the DHS failed to accommodate their need for transportation services to ensure their compliance with mandated drug screenings, those allegations appear specious. Respondents alternatively asserted that they could not attend drug screenings because they lacked funds to fuel and insure their vehicle, they lived too far from a bus stop to obtain a ride to a drug screening facility, the license plate for their vehicle had expired, and they lacked bus tickets; respondent mother also merely asserted that

she was "unable to make it" to the screenings. Evidence was submitted that the caseworker offered respondents access to bus tickets to facilitate their participation in drug screens, but respondents refused the tickets because of the physical distance respondents lived from a bus stop. Yet when actually faced with termination of their parental rights, respondents indicated that they would walk to secure the screens and would accept the bus tickets. While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered. In this instance, services were proffered, but respondents failed to either participate or demonstrate that they sufficiently benefited from the services provided. See *In re Gazella*, 264 Mich App 668, 676-677; 692 NW2d 708 (2005). While respondents were offered various services and did participate in and complete certain mandated requirements of their respective treatment plans, they failed to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication in this matter—their historical problems with alcohol and substance abuse. Consequently, the trial court did not clearly err by finding insufficient compliance with and benefit from the services provided by the DHS, necessitating the termination of respondents' parental rights.

We also conclude the trial court did not clearly err by determining that termination of respondents' parental rights was in the best interests of the child. MCL 712A.19b(5); MCR 3.977(H)(3) and (K); *Trejo*, 462 Mich at 356-357; *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). The child was in foster care or placed with relatives for 22 months. While respondents did make some progress in addressing their issues, the

evidence showed that it was unlikely that the child could be returned to her parents' home within the foreseeable future, if at all. The child required a permanent, safe, and stable home, which neither respondent was capable of providing. Hence, the trial court did not clearly err by determining that termination of respondents' parental rights was in the child's best interests.

Affirmed.

MURRAY, P.J., and WHITBECK and RIORDAN, JJ., concurred.