*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re C. L. WILSON, Minor.

UNPUBLISHED
April 27, 2023

No. 362493
Wayne Circuit Court
Family Division
LC No. 2016-522445-NA

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor child, CW, under MCL 712A.19b(3)(i) and MCL 712A.19b(3)(j). We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of CW as well as six other children: LW, TW, DW, JW, HD, and SW. Before this action commenced, respondent's parental rights to her six other children were terminated on allegations of physical abuse and improper supervision; her rights to SW were terminated due to threatened harm and physical neglect. In those prior cases, respondent was offered specialized services for over two years and failed to benefit from those services. Respondent suffers from anxiety and depression as well as a possible cognitive impairment. CW was born four months prematurely, weighing one pound, and is medically fragile. She has a G-tube that needs to be cleaned every three hours and checked often. CW has epilepsy, cerebral palsy, and other serious medical diagnoses that require she receive around the clock care.

The Department of Health and Human Services (DHHS) filed a petition requesting that the court take jurisdiction of CW and terminate respondent's parental rights at adjudication.[1] The petition alleged that the circumstances leading to respondent losing her parental rights to her other children continued to exist, and that respondent could not care for a medically fragile child who

---

[1] Due to COVID-19, the initial preliminary hearing and permanency planning hearing occurred on February 27, 2020 but the bench trial and best interest hearings were conducted from September 20, 2021 to May 26, 2022.

required 24-hour care. Respondent admitted at adjudication that her parental rights to the six other children had been terminated, she failed to comply with the DHHS parent agency agreement, she did not have housing and did not have income to care for CW. Upon authorizing the petition and finding that the court had jurisdiction, the trial court stated that reasonable efforts did not have to be made to reunite respondent with CW because respondent had her parental rights to her other children involuntarily terminated, and she had failed to rectify the conditions that led to that termination. MCL 722.638(1)(b)(i); MCL 712A.19a(2)(c).

Despite receiving no court order to do so, case workers provided or offered various resources to respondent including information on housing, parenting classes, and extra reminders about parenting time and court dates. The case workers also spent considerable time with respondent and carefully walked her through what was happening in court and explained each of CW's ongoing medical conditions, the specialized care she required and her many specialists' appointments. Respondent started attending therapy. She also started a rehabilitation program for alcohol abuse; unfortunately, she left the program early because she felt she no longer needed it. Respondent was on a waiting list for housing and got a job working one day a week at Little Caesar's at the time of the termination and best interest hearings.

Due to CW's medical fragility doctor's orders not to move her from place to place, and the amount of medical equipment CW needed, it was determined that virtual visits would be in CW's best interests. Therefore, all of the parenting time visits were held over Zoom. Respondent read to CW during the visits, sang to her, and played peekaboo. On one occasion, however, CW has shown signs of physical distress during visits that respondent did not notice or respond to (such as pulling at her pants or G-tube). The foster care worker had to point this out to respondent and call the foster parents to take care of CW's needs. The foster care worker also testified that respondent attendance at parenting time was unreliable; she only attended 8 out of 24 virtual parenting times.

The foster care workers explained that respondent did not seem to fully understand the extent and gravity of CW's medical situation, and respondent could not care for CW given CW's medical conditions. Respondent admitted that she did not know all of CW's medical conditions despite the foster care workers explaining them to her slowly and in detail.

At the conclusion of the adjudication and termination hearings, the trial court found that respondent admitted that the court had jurisdiction over CW based upon the preponderance of the evidence; the court also found by clear and convincing legally admissible evidence that statutory grounds existed to terminate her parental rights pursuant to MCL 712A.19b(3)(i) and (3)(j). Due to time constraints, multiple best interests hearings were held, and the trial court found by a preponderance of the evidence that it was in CW's best interests to terminate respondent's parental rights. Furthermore, it was clearly in CW's best interests to stay with her foster parents who had been caring for her since she was released from the hospital, had been trained on how to care for CW's specific needs, were willing to adopt CW, and had already adopted two of CW's older siblings. From these findings, respondent appeals.

## II. REASONABLE EFFORTS

Respondent argues that DHHS was statutorily required to make reasonable efforts to reunite respondent and CW, and DHHS did not do so. We disagree.

In order to preserve the issue whether the services being provided to a respondent are adequate, the respondent must object to the services being provided to her (or otherwise indicate that the services being provided to her are inadequate) at the time the parent-agency service plan is adopted. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). In this case, respondent did not object when the trial court ordered that reasonable efforts to reunite respondent and CW were not necessary due to aggravating factors, i.e., the involuntary termination of respondent's rights to six other children. She also did not object to the quality of the services she received in spite of that order until the best interests hearing. At that point, the foster care worker was providing respondent with services for months and respondent had already admitted there were grounds to assert jurisdiction over CW and statutory bases on which to terminate her parental rights. Therefore, the issue whether the services offered to respondent were adequate was not preserved for appeal.

This Court reviews a trial court's decision regarding reasonable efforts for clear error. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). Clear error occurs when this Court is left with a definite and firm conviction that a mistake has been made. *Id*. When an issue has not been preserved for appeal in a termination of parental rights case, however, this Court reviews that issue for plain error affecting the respondent's substantial rights. *In re Baham*, 331 Mich App 737, 745; 954 NW2d 529 (2020). Plain error is an obvious error that affects the outcome of the proceedings. *Id*. Reversal for plain error is "unwarranted unless the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

In child protective proceedings, DHHS has an affirmative duty to make reasonable efforts to reunify the family before seeking termination of a respondent's parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). When certain aggravating circumstances are present, reasonable efforts at reunification are not required. *In re Rippy*, 330 Mich App 350, 355; 948 NW2d 131 (2019).

> Under MCL 712A.19a(2)(a), there must be a "judicial determination that the parent has subjected the child to aggravated circumstances" before the Department is excused from making reasonable efforts. Aggravated circumstances are defined in MCL 722.638 to include "[b]attering, torture, or other sever physical abuse" of a child or sibling. MCL 722.638(1)(a)(iii). [*In re Smith-Taylor*, 509 Mich 935, 935; 971 NW2d 657 (2022).]

Respondent claims that reasonable efforts to reunify respondent and CW had to be made because there were no "aggravating circumstances" in this case. The termination of respondent's parental rights in her previous cases, and her subsequent failure to rectify the conditions that led to the termination of her parental rights, are aggravating circumstances under MCL 712A.19a(2). In *In re Sanborn,* 337 Mich App 252, 260; 976 NW2d 44 (2021), this Court found that "[r]easonable efforts are likewise not required when a parent has his or her parental rights involuntarily terminated to a sibling of the child at issue and the parent has failed to rectify the conditions that led to that earlier termination of parental rights. See MCL 712A.19a(2)(c)."

MCL 712A.19a(2) states:

> The court shall conduct a permanency planning hearing within 30 days after there is a judicial determination that reasonable efforts to reunite the child and family are not required. Reasonable efforts to reunify the child and family must be made in all cases *except* if any of the following apply:

> (a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and 18(2) of the child protection law, 1975 PA 238, MCL 722.638.

> * * *

> (c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights. [Emphasis added.]

MCL 722.638(1)(b)(i) states that DHHS shall submit a petition for authorization under MCL 712A.2 if the

> department determines that there is a risk of harm, child abuse, or child neglect to the child and either of the following is true:

> (i) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state and the parent has failed to rectify the conditions that led to the prior termination of parental rights."

In this case, DHHS was not required to make reasonable efforts to reunite respondent with CW. The trial court relied on MCL 712A.19a(2)(c) when it specifically stated that the involuntary termination of respondent's parental rights to CW's siblings, and respondent's subsequent failure to rectify the conditions that led to those terminations, justified not providing reasonable efforts to reunite CW and respondent.

It is undisputed that respondent had her parental rights to her other children involuntarily terminated. The circumstances that led to those terminations, such as homelessness, mental health issues and the inability to physically care for her children, persisted. Furthermore, respondent admitted that there were statutory bases on which to terminate her parental rights under MCL 712A.19b(3)(i) and MCL 712A.19b(3)(j). MCL 712A.19b(3)(i) states that respondent's parental rights may be terminated when the respondent's "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior terminations." Therefore, respondent has admitted that the conditions that led to her prior terminations persisted, and reasonable efforts to reunite respondent with her medically fragile child were not required.

Despite this, the foster care case manager still worked with respondent and referred her to several services through the Judson Center, such as mental health services and specialized parenting classes. Although respondent was on a waiting list for a parent partner, the foster care

worker provided many of the same hands-on services and met frequently with respondent, which is a best practice in *Hicks/Brown* cases.[2] Respondent also participated in parenting time and received one-on-one careful explanations of all CW's health challenges and the status of the case. Therefore, the foster care agency made more efforts than were statutorily required to reunite respondent with CW.

## III. BEST INTERESTS

Respondent also argues that the trial court clearly erred when it terminated her parental rights because terminating her parental rights was not in CW's best interests. We disagree.

To terminate a respondent's parental rights, the trial court must find "that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interest of [the] child . . . ." *In re MOTA*, 334 Mich App 300, 320; 964 NW2d 881 (2020). This Court applies the clear error standard of review to the trial court's determination that terminating parental rights would be in a child's best interests. *Id.* Clear error occurs when "the reviewing court has a definite and firm conviction that a mistake has been committed." *Id.* (quotation marks and citation omitted). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id.* (quotation marks and citation omitted).

When considering a child's best interests, this Court focuses on the child, not the needs of the parent. *Id.* at 321. The factors a trial court may consider when determining a child's best interest include the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). Other factors may include "how long the child was in foster care or placed with relatives," "the likelihood that the child could be returned to [the] parent's home within the foreseeable future, if at all[,]" "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* (quotation marks and citation omitted).

Here, respondent's visits were virtual and respondent did her best to interact with CW when she attended visits. As respondent points out, it may be more difficult to develop a bond with a child virtually, especially a young child. Unfortunately, respondent missed more than half of the virtual visits and failed to notice when CW was exhibiting signs of physical distress because she was not looking at CW. Furthermore, respondent admitted that she did not know all of CW's medical conditions, despite having CW's medical conditions explained to her multiple times. Therefore, the trial court did not err when it concluded that the bond between respondent and CW was weak, and respondent did not show adequate parenting skills. CW has been with her foster parents since she was released from the hospital four months after being born. She is flourishing in her foster home, she is with siblings, and her foster parents were willing to adopt her. Her foster parents provide around the clock care for CW and are well informed about her medical conditions. In contrast, respondent does not have a working knowledge of CW's medical conditions or how

---

[2] *In re Hicks/Brown*, 500 Mich at 85-88.

to care for CW, does not have stable housing, and does not have adequate income to care for a medically fragile child. There is no indication that respondent will ever be able to understand CW's medical conditions or care for CW physically. CW requires permanency and stability, especially given her medical conditions.

We do not have a definite and firm conviction that the trial court erred when it concluded that it was proven by a preponderance of the evidence that terminating respondent's parental rights would be in CW's best interests. Therefore, the trial court did not clearly err when it held that the termination of respondent's parental rights was in CW's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney