*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. L. KOEHLER, Minor.

UNPUBLISHED
January 13, 2025
10:11 AM

No. 371325
Clare Circuit Court
Family Division
LC No. 22-000046-NA

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent-father appeals of right the order terminating his parental rights to his minor child, ALK, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); (c)(*ii*) (other conditions exist that could have led to adjudication); (g) (failure to provide proper care and custody); and (j) (reasonable likelihood the child will be harmed if returned to the parent). Respondent-father contends that the Department of Health and Human Services (DHHS) failed to make reasonable accommodations or provide him with transportation assistance. We affirm.

## I. FACTUAL BACKGROUND

In September 2022, the DHHS filed a petition alleging that respondent-father had abused his girlfriend's child, KF.[1] KF had been taken to the Mid-Michigan Medical Center due to severe bruising consistent with a handprint on his buttocks. The petition was amended in October 2022 after the birth of ALK, the child of respondent-father and his girlfriend. The DHHS requested that the trial court authorize the petition, place ALK in the care of the DHHS, and exercise jurisdiction. Following a preliminary hearing, the trial court authorized the petition, and ALK was placed in a non-relative foster home. The trial court ordered reasonable efforts toward reunification.

In January 2023, the trial court exercised jurisdiction over ALK based on admissions made by respondent-father about the mistreatment of KF. Respondent-father was ordered to complete

---

[1] Respondent is not KF's biological father, and KF's biological father is not a party to this appeal.

-1-

the services outlined in the parent-agency treatment plan (PATP), which included: (1) participating in infant mental health services through Community Mental Health for Central Michigan (CMH); (2) finding independent housing; (3) receiving mental-health counseling and participating in anger-management classes; (4) signing releases for the DHHS to receive information about ALK and respondent-father; (5) participating in trauma-informed parent education; and (6) participating in "baby court" services. Additionally, substance-abuse screenings were ordered after completion of a psychological evaluation. During the proceedings, respondent-father's progress substantially decreased. He did not complete counseling services, he refused to participate in substance-abuse screenings, he was not consistent in attending parenting times, and he failed to obtain appropriate housing.

In March 2024, the DHHS filed a supplemental petition seeking termination of respondent-father's parental rights to ALK. After holding a termination hearing, the trial court concluded that grounds for termination existed under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). The trial court also found that termination of respondent-father's parental rights was in the best interests of ALK, and that the DHHS had made reasonable efforts toward reunification. This appeal followed.

## II. LEGAL ANALYSIS

Respondent-father asserts that the DHHS failed to accommodate his work schedule and to provide him with transportation assistance. Further, respondent-father claims that the DHHS did not accommodate him under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. This Court reviews "for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondents with the child." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

A claim for violation of rights under the ADA must be presented in a timely manner. *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). The time for requesting an "accommodation in services is when the court adopts a service plan[,]" and the issue is unpreserved if the respondent "fail[s] to object or indicate that the services provided to them were somehow inadequate[.]" *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012) (quotation marks and citation omitted). Here, respondent-father did not raise that issue in the trial court, so the issue is unpreserved. This Court has explained that "[w]here a disabled person fails to make a timely claim that the services provided are inadequate to her particular needs, she may not argue that petitioner failed to comply with the ADA at a dispositional hearing regarding whether to terminate her parental rights." *In re Terry*, 240 Mich App at 26. "In such a case, her sole remedy is to commence a separate action for discrimination under the ADA." *Id*.

Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). In order to avoid forfeiture under the plain-error rule, three requirements must be met: (1) the error must have occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). An error affects substantial rights "if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

Reversal is appropriate only if the plain error "seriously affect[ed] the integrity, fairness, or public reputation" of the proceedings. *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020).

Generally, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). And as part of those reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. The ADA obligates the DHHS to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the modifications would fundamentally alter the services provided. *In re Sanborn*, 337 Mich App 252, 263; 976 NW2d 44 (2021). In order to offer accommodations, the DHHS " 'must have knowledge that the individual is disabled, either because that disability is obvious or because that individual (or someone else) has informed the entity of the disability.' " *In re Hicks*, 500 Mich at 87 (citation omitted). When the DHHS knows of a disability, it bears the duty to reasonably accommodate the disability by furnishing services that are designed to facilitate the child's return home. *In re Hicks*, 315 Mich App 251, 281-282; 890 NW2d 696 (2016), aff'd in part, vacated in part on other grounds by *In re Hicks*, 500 Mich 79. The DHHS must:

> offer evaluations to determine the nature and extent of the parent's disability and to secure recommendations for tailoring necessary reunification services to the individual. The DHHS must then endeavor to locate agencies that can provide services geared toward assisting the parent to overcome obstacles to reunification. If no local agency catering to the needs of such individuals exists, the DHHS must ensure that the available service providers modify or adjust their programs to allow the parent an opportunity to benefit equally to a nondisabled parent. [*Id*. at 282.]

"Absent reasonable modifications, efforts at reunification cannot be reasonable [when the DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Sanborn*, 337 Mich App at 264 (quotation marks and citation omitted).

Here, the DHHS offered many services to respondent-father throughout the proceedings. At no point did respondent-father inform the DHHS of any disability diagnosis, any special needs resulting from a disability, or any services required to accommodate special needs. Respondent-father completed a psychological evaluation where his evaluator recommended parenting classes, drug screens, and individual therapy for anger management. The trial court incorporated all those recommendations into respondent-father's PATP. Respondent-father quotes from the evaluator's testimony to prove that he "had mental disabilities that would require extra effort to accommodate" because the "evaluation pointed out his paranoia, impulsivity, and anger management deficits." Respondent-father was enrolled in anger-management classes, but he explained at the dispositional review hearing in May 2023 that the classes were expensive. At the dispositional review hearing in August 2023, respondent-father reported that he did not want to be discharged from the program for owing money. Thus, the DHHS permitted respondent-father to enroll in emotional-regulation classes instead. Respondent-father was nevertheless discharged from therapy after failing to attend his appointments. In addition, respondent-father refused to submit to substance screenings and did not address concerns about his substance use. To be sure, respondent-father was angry about his

poor progress, but he refused to cooperate with the DHHS when it attempted to address the issues with him.

As this Court has explained, "[w]hile the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. A respondent must demonstrate that he "sufficiently benefited from the services provided." *Id*. The record establishes that the DHHS made reasonable efforts to accommodate respondent-father's anger-management issues based on the recommendations of his psychological evaluation. The record further reveals that respondent failed to adequately participate in, or benefit from, the services provided to him. When challenging the services offered, a respondent must establish that he "would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264. Respondent-father merely contends that the findings of his psychological evaluation were "apparent from the beginning" and insists that the DHHS did not accommodate them. Respondent-father claims his "need for medication . . . should have become obvious as [he] began floundering in his own issues[,]" but respondent-father does not explain why medication would have allowed him to fare better than the solutions recommended.

Respondent-father does not argue that the services the DHHS provided in response to his psychological evaluation were unreasonable, nor does he explain how any different services would have better accommodated him. Because respondent-father merely asserts that the services offered to him were not sufficient because of his disability, without identifying how they were insufficient or identifying any services that would have been appropriate when considering that disability, he has not identified plain error affecting substantial rights. *Id*. at 267 ("Mother's blanket denial that the services offered were sufficient in light of her intellectual disability, without identifying any services that would have been appropriate in light of such disability or how the services that were offered were deficient, does not establish plain error affecting substantial rights.").

With respect to respondent-father's claim that the DHHS failed to accommodate his work schedule, the record reveals the exact opposite. Respondent-father's caseworker testified that she wanted to work around respondent's work schedule, but she never received a copy of that schedule. The DHHS cannot accommodate a work schedule if it is not made aware of scheduling conflicts. Even so, the DHHS knew that respondent-father worked the night shift, so it tried to accommodate that schedule by providing parenting times in the mornings after work and in the afternoons before his shift. Respondent-father's caseworker testified that respondent-father "never said [the offered parenting times] wouldn't work." Even if she could not personally have provided parenting times that were convenient for respondent-father, she testified that she would have requested that one of her coworkers cover for her. In addition, testimony revealed that respondent-father was fired from his job on March 27, 2024, yet he continued to complain that the DHHS was not accommodating his work schedule even after he was fired.

Respondent-father was required to confirm scheduled parenting times on the nights before scheduled visits because of his chronic lack of attendance and the desire to reduce trauma to ALK. After that confirmation requirement was implemented, all but one of respondent-father's parenting time visits were canceled. If respondent-father could not attend a parenting-time visit, he could have reached out to reschedule the visit, but he never made contact. When the DHHS attempted to address the issue with respondent-father, he would lose his temper at them for not working with

him. Hence, respondent-father failed to participate in, and benefit from, the services provided to him. See *In re Frey*, 297 Mich App at 248 (the respondent must "demonstrate that [he] sufficiently benefited from the services provided").

Respondent-father also argues that the DHHS did not provide him with proper bus passes. Although it appears that respondent-father did not receive proper bus passes, that does not amount to clear error affecting the trial court's finding that reasonable efforts at reunification were made. Respondent-father was offered transportation to and from his weekly parenting-time visits, but he repeatedly canceled or refused to attend the visits. Moreover, after respondent-father was removed from anger-management classes for lack of attendance, he was permitted to complete emotional-regulation classes online through CMH instead. The record does not identify any other need that respondent-father had for bus passes, and his initial complaints were limited to parenting time and anger management. The DHHS accommodated respondent-father by arranging for transportation to parenting-time visits and permitting him to complete a different version of anger management, but respondent-father did not benefit from any of those services provided to him.

In sum, respondent-father failed to engage in, and benefit from, the services offered by the DHHS. See *id*. There is no indication respondent would have fared better if the DHHS had offered other services, additional services, or additional accommodations. See *In re Sanborn*, 337 Mich App at 264. Hence, the trial court did not err when it determined that the DHHS made reasonable efforts to promote reunification. Because respondent-father does not challenge the termination of his parental rights to ALK on any other grounds, we need not address any other issues.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates

-5-