*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. ICKES, Minor.

UNPUBLISHED
December 19, 2025
10:27 AM

No. 375736
Hillsdale Circuit Court
Family Division
LC No. 2024-000714-NA

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, AI, at the initial dispositional hearing under MCL 712A.19b(3)(a)(*ii*) (desertion for more than 91 days).[1] We vacate and remand for further proceedings consistent with this opinion.

## I. FACTS

Respondent was not present for the child's birth in October 2024, and he did not visit the hospital thereafter.[2] The trial court entered an order taking the child into protective custody, and approximately a week after her birth, the child was released from the hospital and placed with her maternal half sibling who had been adopted by paternal relatives.

The Department of Health and Human Services (DHHS) was initially unable to locate respondent. Accordingly, in November 2024, the trial court ordered service by publication. In January 2025, the trial court held a preliminary hearing; respondent, represented by counsel,

---

[1] The trial court also terminated the parental rights of the child's mother, but she has not appealed that decision and is not a party to this appeal.

[2] Because the child showed signs of withdrawal, she was transferred to a neonatal intensive care unit.

appeared remotely from jail. The trial court informed respondent of his status as the putative father and ordered DNA testing.

In February 2025, an adjudication hearing was held, at which respondent testified; he was treated as a putative father because the court-ordered DNA testing had not yet been completed. At the hearing's conclusion, the trial court conditionally took jurisdiction over the child and respondent as the court awaited DNA testing to establish whether respondent was the child's biological father; the court also ordered that reasonable efforts be made to reunify respondent and the child "to make it possible for the child to safely return to" respondent. The trial court found that there was no indication that respondent had ever seen the child despite the fact that: (1) he was aware that the child's mother was pregnant, and (2) both he and the mother believed that he was the father. The trial court ultimately found that jurisdiction was appropriate because respondent had failed to provide proper or necessary support and had abandoned the child without proper care and custody, and criminality in the home made it an unfit place for the child to live. The trial court also scheduled the dispositional hearing for March 2025 to resolve the supplemental petition requesting the termination of respondent's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*).

At the March 2025 dispositional hearing, the trial court discovered that respondent's DNA test results were still unavailable. The court received testimony and spoke with respondent, who was still incarcerated in Ohio, on the record; the court ordered reasonable efforts for respondent including a psychological evaluation, substance use assessment, follow any recommendations, and parenting time within the discretion of the DHHS, The court also specified that if respondent was determined to be the father, he should participate in and benefit from a parent-agency treatment plan and comply with DHHS or private agency referrals.

Although the trial court set the next hearing for May 2025, all parties except respondent assembled for respondent's dispositional hearing in April 2025 before a referee. Respondent remained incarcerated in Ohio pending sentencing on his probation violations. After finding that the DNA results established respondent as the child's biological father, the referee entered an order deeming respondent to be the child's legal father and proceeded with the dispositional hearing. At the conclusion of the hearing, the referee terminated respondent's parental rights on the statutory ground of desertion, MCL 712A.19b(3)(a)(*ii*), found that no reasonable efforts were required,[3] and determined that termination was in the child's best interests. On April 16, 2025, the trial court affirmed the referee's disposition/termination findings of fact and law. Respondent now appeals.

---

[3] The referee stated on the record that he had not reviewed the evidence received at the March 2025 hearing, including the trial court's findings and statements to respondent; the referee's statement that no reasonable efforts were required confirms this fact as the trial court clearly ordered that reasonable efforts be made once respondent was determined to be the child's father via DNA testing.

## II. AGGRAVATING CIRCUMSTANCES

On appeal, respondent argues that the DHHS failed to provide reasonable reunification efforts and that no aggravating circumstances existed to excuse the lack of effort. We agree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve an argument that petitioner failed to make reasonable efforts at reunification, the respondent must "object or indicate that the services provided to them were somehow inadequate . . . ." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Because respondent did not object to his services or raise the issue of reasonable efforts in the trial court, this issue is not preserved. See *id*. "[U]npreserved issues are reviewed for plain error affecting substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Absent aggravating circumstances, the petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "This means petitioner must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Atchley*, 341 Mich App at 338-339; 900 NW2d 685 (2022) (quotation marks and citation omitted). "The [petitioner] is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Termination of parental rights is premature if an incarcerated parent is "not afforded a meaningful and adequate opportunity to participate." *Id*.

In this case, the trial court ordered that respondent, once established as the child's father, receive specific reasonable efforts including a psychological evaluation, substance use assessment, and parenting time. However, the referee stated, without making specific factual findings, that reasonable efforts were not necessary, pursuant to MCL 712A.19a(2)(a), because aggravated circumstances were found under MCL 722.638(1)(a)(*i*), which provides as follows:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:
>
> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:
>
> (*i*) Abandonment of a young child.

-3-

Abandonment is defined as the act of leaving a "child willfully and without an intent to return." *Black's Law Dictionary* (12th ed). Similarly, voluntary abandonment is defined as "a natural parent's willful act or course of conduct that implies a conscious disregard of or indifference to a child, as if no parental obligation existed." *Black's Law Dictionary* (12th ed). There is no statutory rule outlining the time necessary to constitute abandonment under MCL 722.638(1)(a)(*i*).

But in this case, the trial court affirmed the referee's findings that statutory grounds for termination were met under MCL 712A.19b(3)(a)(*ii*) (desertion for 91 or more days without seeking custody in that period); therefore, we conclude that at least 91 days of desertion must have occurred before a known parent's rights could have been terminated. See *In re Rood*, 483 Mich 73, 127 n 5; 763 NW2d 587 (2009) (YOUNG, J., concurring in part) (discussing MCL 722.638(1)(a)(i) and stating that "[a] parent abandons, or 'deserts,' his child if he is absent for more than 91 days and has not sought custody of his child. MCL 712A.19b(3)(a)(*ii*).").

In *In re Knipp*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368780); slip op at 3, the respondent-father's parental rights were terminated under, *inter alia*, MCL 712A.19b(3)(a)(*ii*). On appeal, this Court addressed whether the trial court erred when it considered the respondent-father's conduct after he was ordered to determine paternity, but before a judicial determination of paternity was made, in resolving whether 91 days had elapsed as required by MCL 712A.19b(3)(a)(*ii*). *Id*. at ___; slip op at 4. The relevant facts were as follows:

> [The] respondent was listed as the child's putative father from the beginning of the case. On January 3, 2023, the trial court ordered respondent to submit to DNA testing to establish paternity of the child, but respondent did not do so until after he was arrested and incarcerated in July 2023. After submitting to DNA testing, respondent made no further efforts to visit, support, or plan for [the child's] care. Respondent testified that he was present at the hospital on the day [the child] was born, and that he suspected that he was [the child's] father before taking the DNA test; yet he made no effort to establish paternity, visit, or support [the child] during, at least, the first nine months of these proceedings. *Id*. at ___; slip op at 5.

This Court noted that "[t]he plain language of MCL 712A.19b(3)(a)(*ii*) does not require that the requisite 91-day period of abandonment occur after a judicial determination of paternity has been made." *Id*. Nonetheless, this Court concluded that "the trial court did not err by considering respondent's conduct after being ordered to determine paternity, but before a judicial determination of paternity was made, in determining whether 91 days had elapsed as required by MCL 712A.19b(3)(a)(ii)." *Id*. at ___; slip op at 5.

In this case, respondent was ordered to complete DNA testing on January 23, 2025, and his parental rights were terminated on April 16, 2025. Accordingly, only 83 days passed between the date that respondent was ordered to determine paternity and the termination of respondent's parental rights. Therefore, even assuming arguendo that respondent did not express a desire for custody during that period—which the record suggests that he did—sufficient time had not passed to establish desertion or abandonment. See *In re Rood*, 483 Mich at 127 n 5 (YOUNG, J., concurring in part); *In re Knipp*, ___ Mich App at ___; slip op at 5. For this reason, we conclude that the trial court plainly erred by: (1) terminating respondent's parental rights under MCL 712A.19b(3)(a)(*ii*),

and (2) finding that reasonable efforts were not necessary in this case.[4] See *In re Sanborn*, 337 Mich App at 258.

III. CONCLUSION

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[4] Because we conclude that this matter should be remanded for further proceedings, we do not reach respondent's remaining arguments on appeal.