*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. D. BURTON, Minor.

UNPUBLISHED
April 30, 2025
1:47 PM

No. 371153
St. Joseph Circuit Court
Family Division
LC No. 2023-000014-NA

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her minor child, DDB, under MCL 712A.19b(3)(j) (reasonable likelihood, based on the parent's conduct or capacity, that the child will be harmed if returned to the parent). On appeal, respondent argues that termination was premature because the Department of Health and Human Services (DHHS) did not make reasonable efforts to reunify her with her child. We disagree and affirm.

## I. BACKGROUND

This appeal stems from the trial court's May 2024 order terminating respondent's parental rights to DDB. In January 2023, DHHS petitioned the trial court to exercise temporary jurisdiction over DDB. It alleged that respondent used methamphetamine and maintained a relationship with DDB's father although he committed multiple acts of domestic violence against her while DDB was present. It further alleged that respondent sought emergency medical treatment after falling down stairs while intoxicated. According to DHHS, respondent drove to a hospital with DDB in her vehicle, and upon her arrival, medical personnel determined that her blood alcohol level was three times the legal limit. After a preliminary hearing, the trial court authorized the petition, removed DDB from respondent's care, placed DDB in his maternal aunt's home, and suspended respondent's parenting time.

In May 2023, the trial court held an adjudicatory hearing. Respondent did not appear. During the hearing, DHHS caseworker Amanda Heitman testified that she began working with respondent in September 2022—shortly after DDB's father was arrested following an incident of domestic violence against respondent. Respondent had admitted to Heitman that she used

-1-

methamphetamine but maintained that she only did so outside of DDB's presence. Heitman offered respondent services including drug screens, housing aid, domestic violence counseling, substance abuse counseling, and behavioral health counseling but described her cooperation as variable. To Heitman's knowledge, respondent completed multiple intakes but did not otherwise participate in the offered services. After Heitman's testimony, DHHS caseworker Amie Mourey testified about the incident when respondent sought emergency medical treatment after falling down stairs while intoxicated. Mourey spoke to respondent in the emergency room. Respondent appeared intoxicated during their conversation and stated that she was holding DDB when she fell down the stairs but could not otherwise recall how the incident occurred. According to Mourey, respondent also acknowledged that she drove to the hospital with DDB in her vehicle. Mourey also noted that DDB was not properly dressed for the winter weather at the time. On these bases, the trial court found that there were statutory grounds to exercise jurisdiction over DDB under MCL 712A.2(b)(2).

The trial court held a dispositional hearing immediately after the adjudicatory hearing. It adopted the case service plan proposed by DHHS caseworker Dawn Wolf. Per the case service plan, respondent was required to obtain and maintain suitable housing, employment, and transportation. The plan required her to refrain from drug and alcohol use and participate in either Alcoholics Anonymous or Narcotics Anonymous. It also required her to complete random drug screens, a substance abuse assessment, a psychological evaluation, infant mental health services, domestic violence services, and community mental health services. Respondent's parenting time remained suspended pending her participation in the case service plan.

In March 2024, DHHS petitioned the trial court to terminate respondent's parental rights. It alleged that termination was warranted under MCL 712A.19b(3)(j) because there was a reasonable likelihood, based on respondent's conduct or capacity, that DDB would be harmed if returned to her care.

In May 2024, the trial court held a termination hearing. During the hearing, Wolf testified that respondent failed to make meaningful progress in her case service plan. Although Wolf referred her to multiple substance abuse counseling facilities, respondent did not begin substance abuse counseling until April 2024. Respondent failed to complete nearly all of her drug screens, and for that reason, DHHS presumed that they would have been positive. Respondent failed to complete a psychological evaluation despite Wolf's referral. And Wolf could not verify that respondent engaged in domestic violence counseling although Wolf suggested that she contact Domestic and Sexual Abuse Services (DASAS) and offered to help her do so. Respondent was not able to obtain suitable housing although Wolf referred her to affordable housing facilities and offered to help her contact them. She also failed to maintain stable employment. Respondent's parenting time was suspended for much of the proceedings because she did not consistently engage in services. According to Wolf, respondent also behaved inappropriately during a supervised visit with DDB by yelling at another person in the public park where the visit took place. Wolf knew that respondent lacked reliable transportation but her supervisor declined to give respondent prepaid gasoline cards because DHHS had a limited number available, and respondent did not engage in services on a consistent basis. Wolf noted that DHHS gave respondent a prepaid gasoline card on one occasion but respondent did not utilize it to attend visitation with DDB.

-2-

For her part, respondent testified that she was attending substance abuse counseling to address her alcohol use and had not consumed alcohol in roughly three months. She chose to stop completing drug screens because they were consistently negative for methamphetamine, and she denied testing positive for methamphetamine as DHHS alleged in the initial petition. She also chose not to participate in infant mental health services because she believed that she would be judged. She further acknowledged that she lacked stable housing. She stood by her decision to drive to the hospital with DDB in her vehicle as DHHS alleged in the initial petition but disputed that her blood alcohol level was three times the legal limit at the time. She recognized the importance of completing her case service plan and engaged in services to the best of her ability but stated that she was hindered by her prior trauma and monetary limitations. She identified her inability to afford gasoline as one of her primary impediments.

Following the presentation of evidence, the trial court concluded that DHHS made reasonable efforts to reunify respondent with DDB. The trial court found grounds to terminate respondent's parental rights under MCL 712A.19b(3)(j) and concluded that termination would serve DDB's best interests. This appeal followed.

## II. PRESERVATION AND STANDARD OF REVIEW

To preserve the issue of whether reasonable efforts were made to reunify a child with their family, a respondent must "object or indicate that the services provided to them [are] somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). A respondent may do so "when the initial case services plan is adopted" or "at later dispositional-review and permanency-planning hearings." *In re Atchley*, 341 Mich App 332, 337-338; 990 NW2d 685 (2022). Although respondent expressed to a DHHS caseworker her opinion that some services offered were unnecessary, she failed to object or otherwise indicate that they were inadequate when the initial case service plan was adopted, during a dispositional review hearing, or during a permanency planning hearing. This issue is therefore unpreserved.

We review unpreserved issues in termination proceedings for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re MJC*, ___ Mich App at ___; slip op at 2 (quotation marks and citation omitted). "The party asserting plain error bears the burden of persuasion with respect to prejudice." *Id*. at ___; slip op at 2.

## III. LAW AND ANALYSIS

Respondent argues that termination was premature because DHHS failed to make reasonable efforts to reunify her with DDB. She asserts that DHHS should have done more to help her locate services identified in her case service plan and should have given her prepaid gasoline cards to help her engage in such services. We disagree.

Generally, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. DHHS must also update the service plan in 90-day intervals. See MCL 712A.18f(5). While DHHS has a duty to provide services to secure reunification, the parent has "a commensurate responsibility . . . to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App at 339 (quotation marks and citation omitted).

Here, DHHS identified services individually tailored to respondent's needs and the goal of reunification. DHHS identified domestic violence exposure as a barrier to reunification, and respondent was required under her case service plan to engage in domestic violence counseling. During the termination hearing, Wolf testified that she recommended that respondent contact DASAS and offered to help her do so. Respondent did not take Wolf up on her offer. Wolf could not verify that respondent ever engaged in domestic violence counseling despite attempting to do so. The record therefore reflects that DHHS made reasonable efforts to rectify domestic violence exposure as a barrier to reunification but respondent did not satisfy her commensurate responsibility to participate in the services offered.

DHHS also identified substance abuse as a barrier to reunification, and respondent was required under her case service plan to engage in substance abuse counseling, community mental health services, and drug screens. During the termination hearing, Wolf testified that she referred respondent to multiple facilities but respondent did not begin substance abuse counseling until after DHHS petitioned the trial court to terminate her parental rights. Wolf also testified that respondent never completed a psychological evaluation despite her referral. She further testified that respondent failed to complete nearly all of her drug screens, and for that reason, DHHS presumed that they would have been positive. The record therefore reflects that DHHS made reasonable efforts to rectify substance abuse as a barrier to reunification but respondent did not satisfy her commensurate responsibility to participate in the services offered.

DHHS further identified unstable housing as a barrier to reunification, and respondent was required under her case service plan to obtain and maintain suitable housing. During the termination hearing, respondent acknowledged that she did not obtain suitable housing for DDB. Additionally, Wolf testified that she told respondent about multiple low-income housing facilities and offered to help respondent contact them. Respondent did not take Wolf up on her offer. Respondent also failed to maintain stable employment as required under her case service plan, which could have given her the financial means to obtain suitable housing. The record therefore reflects that DHHS made reasonable efforts to rectify unstable housing as a barrier to reunification but respondent again failed to satisfy her commensurate responsibility to utilize DHHS's housing resources.

DHHS personnel also knew that respondent lacked reliable transportation throughout the proceedings. During the termination hearing, Wolf testified that she knew respondent lacked reliable transportation but her supervisor declined to give respondent prepaid gasoline cards because DHHS had a limited number available, and it was unclear whether respondent would use

the prepaid gasoline cards to engage in services. Indeed, DHHS gave respondent a prepaid gasoline card on one occasion but respondent did not use it to attend visitation with DDB. Respondent was also unwilling to engage in certain services regardless of transportation. She endorsed her previous decision to drive with DDB in her vehicle while intoxicated. She also testified that she chose not to engage in infant mental health services because she believed she would be judged. And she chose not to complete drug screens because she tested negative for methamphetamine for what she believed to be a sufficient period. DHHS could not confirm her participation in certain counseling services because respondent refused to sign a release that would confirm whether she participated. In light of these circumstances, while prepaid gasoline cards could have been beneficial to respondent, DHHS was not required to provide them in order to maintain reasonable reunification efforts.

In sum, the trial court did not clearly or obviously err by concluding that DHHS made reasonable efforts to reunify respondent with DDB.[1] While DHHS could have done more to assist respondent, its reunification efforts were reasonable. We affirm.

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

---

[1] Because the trial court did not clearly or obviously err in this regard, we decline to address whether respondent was prejudiced by the alleged error.